704 So.2d 343 (1997)
Shelley Marlene RICHEY, Plaintiff-Appellant,
v.
John Coogan RICHEY, Jr., Defendant-Appellee.
No. 97-838.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1997.
*344 Richard Lynn Ducote, New Orleans, for Shelley Marlene Richey.
Henry R. Liles, Lake Charles, for John Coogan Richey Jr.
Before DOUCET, C.J., and YELVERTON and SAUNDERS, JJ.
YELVERTON, Judge.
John and Shelley Richey were married in November 1989 and divorced in November 1993. Two children were born of the marriage. In November 1994 joint custody of the children was ordered with John designated domiciliary parent, and Shelley was ordered to pay child support in the amount of $522.00 per month to John, retroactive to October 6, 1994.
In March 1995 a judgment ordered Shelley to pay past due child support in the amount of $2,525.80. A year later, in February 1996, another judgment ordered Shelley to pay past due child support in the additional amount of $6,264.00. This judgment also held Shelley in contempt for failure to pay child support and for failure to submit to psychotherapy as a condition of her visitation rights. The trial court suspended the sentence of 30 days in jail on the condition that she comply with the orders for payment of child support and psychotherapy.
In March 1996 John filed a rule asking for the suspension of Shelley's nursing and driver's licenses pursuant to La.R.S. 9:315.30 et seq. Shelley countered with a rule to reduce, suspend, or terminate child support. Motions dealing with other incidental matters were also filed. During the next several months both parties requested and were granted continuances on the hearings of these rules. Finally, all rules were set to be heard together on December 2, 1996.
On October 1, 1996, Shelley's attorney withdrew from the case, and Shelley was left without counsel. On November 26, 1996, Shelley filed another motion for a continuance claiming she had been unable to obtain new counsel. This motion was denied.
At the hearing on December 2, 1996, judgment was rendered containing several orders: denying Shelley's motion for a continuance, granting her a decrease in child support to $300.00 per month retroactive to May 1996, ordering her to pay past due child support in the amount of an additional $3,856.00, holding her in contempt of court, vacating the previous suspended sentence, ordering her to serve the 30 days in jail, and suspending her nursing and driver's licenses. It is the order of suspension that Shelley appeals.
Shelley assigns two errors to the December 2, 1996 judgment. First, she argues that the trial court abused its discretion in denying her a continuance. Second, she argues that the trial court abused its discretion in ordering the suspension of her licenses. For the following reasons, we affirm both decisions.

The Motion for a Continuance
La.Code Civ.P. art. 1601 provides that "a continuance may be granted in any case if there is good ground therefor." Often, when a litigant's lawyer withdraws at or near trial, that litigant may be entitled to a continuance to employ another attorney. Gilcrease v. Bacarisse, 26,318 (La.App. 2 Cir. 12/7/94), 647 So.2d 1219, writ denied, 95-0421 (La.3/30/95), 651 So.2d 845. However, the trial court's discretion in this area is great, and the decision to deny such a requested continuance will not be disturbed absent a clear showing of abuse. Id.
Shelley had nearly two months after her attorney withdrew to find new representation. She provided no explanation for her *345 failure to do so. The record shows that 12 continuances had already been granted during the course of the proceedings: four to John, six to Shelley, and two by joint stipulation. The trial judge expressed his concern for his docket and the need of the parties to resolve the issues being presented. We find no abuse in the trial court's decision to deny the continuance.

Revocation of Shelley's Licenses
La.R.S. 9:315.30 provides:
The legislature finds and declares that child support is a basic legal right of the state's parents and children, that mothers and fathers have a legal obligation to provide financial support for their children, and that child support payments can have a substantial impact on child poverty and state welfare expenditures. It is therefore the legislature's intent to encourage payment of child support to decrease overall costs to the state's taxpayers while increasing the amount of financial support collected for the state's children. To this end, the courts of this state are authorized to suspend certain licenses of individuals who are not in compliance with a court order of child support.
The contractual obligation of a parent to support his or her child is imposed by law. La.Civ.Code art. 227. As quoted above, our legislature has found that there is a public need to encourage parents to meet this obligation. La.R.S. 9:315.31-32 provide that where an obligor parent fails to comply with an order of child support, the court may suspend certain licenses of that parent, including professional and driver's licenses.
Shelley argues in brief:
It seems reasonable to suspend the hunting and fishing licenses of a recalcitrant parent to encourage compliance with a support order. But it is patently unreasonable to order the suspension of a professional or business license, and the driver's license, when those licenses are essential for the parent to earn the income to pay the child support. While there are probably parents whose ability to pay child support may be independent of the possession of such licenses, it is logical that for most parents, such as is the case for Ms. Richey, a professional license to hold a job and a driver's license in order to get to the job are absolutely necessary to generate income.
There is no doubt that the loss of a person's professional and driver's licenses has an impact on that person's ability to generate income. So does imprisonment for contempt of a court's order to pay child support. But such loss occurs only where the person, despite the ability to generate income, chooses not to support his or her children. Imprisonment for contempt has traditionally been a last resort effort employed by courts to compel compliance with support orders. The legislature has added another last resort measurethe suspension of certain licenses of individuals who are not in compliance. This is not unreasonable. What is unreasonable is for a parent who can pay child support to avoid paying it.
Shelley failed to pay child support. From the time of the original child support order, dated November 26, 1994, Shelley made only two $10.00 payments. She has paid $20.00 on $12,645.80 judicially found owed. Shelley had the ability to provide support. She is a registered nurse. When she is working, she makes between $12.00 and $18.00 per hour. For a while, in 1995, she was making $3,200.00 per month. She remarried, and her new husband was making about $1,200.00 per month. Yet, the only financial support she has provided for her six and seven-year-old children in more than two years was $20.00. La.R.S. 9:315.30 et seq. are directed at parents, like Shelley, who, despite their ability, choose not to support their children when ordered by the court to do so. We find no abuse in the trial court's decision to suspend Shelley's nursing and driver's licenses.
The judgment of the trial court is affirmed with costs assessed to Shelley.
AFFIRMED.